IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ASHANTI CHEREE-COMBSEZ, | : | Case No. 1:24-cv-136 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| OTTERBEIN SENIOR LIFE – MAINEVILLE, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 14), which is fully briefed (Docs. 16, 17). Defendants also filed a Motion to Strike Plaintiff's Sur-Reply (Doc. 19), but Plaintiff did not file any response. Thus, this matter is ripe for the Court's review. For the following reasons, the Court **GRANTS** Defendants' Motion to Strike (Doc. 19) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 14).

## BACKGROUND

Defendant Otterbein Senior Life ("Otterbein") is a nonprofit organization that provides residential options spanning from independent living, in-home care, and hospice. (Klespies Decl., Doc. 13-1, Pg. ID 48.) Plaintiff Ashanti Cheree-Combsez started working for Otterbein as an "elder assistant" in a small house setting. (*Id.*) In this role, Plaintiff's responsibilities included, among other things: ensuring that residents maintain

hygiene and adequate showering, helping with routine personal care, planning appropriate meals, and housekeeping. (*Id.*; Job Description, Doc. 13-2, Pg. ID 52-54.) Elder assistants like Plaintiff were "responsible for providing high quality basic care to the [residents] on a daily basis while ensuring their dignity, freedom of choice and individuality." (Job Description, Doc. 13-2, Pg. ID 52.) As for the organizational structure, Plaintiff was supervised by Antonio Cruz. (Klespies Decl., Doc. 13-1, Pg. ID 48.) Cruz, in turn, ultimately reported to Kathleen Klespies, who served as the Licensed Nursing Home Administrator. (*Id.*)

On October 17, 2022, Plaintiff received an educational consult—a written report used to identify and address an employee's work-related behaviors that need improvement. (Klespies Decl., Doc. 13-1, Pg. ID 48-49.) On this particular occasion, Plaintiff was notified of the "pattern of shower refusals" when she was working and instructed to "please pull in nurse if you are needing assistance or tips." (Educational Consult, Doc. 13-3, Pg. ID 55.) Elder assistants were responsible for ensuring resident hygiene, even when a resident did not have the capacity or desire to shower. (Klespies Decl., Doc. 13-1, Pg. ID 48.) The educational consult also warned Plaintiff to refrain from taking breaks longer than thirty minutes and to not use break time for napping on campus. (Educational Consult, Doc. 13-3, Pg. ID 55.)

About a month later, on November 21, 2022, Plaintiff received a disciplinary action for sleeping in the common area. (Disciplinary Action, Doc. 13-4, Pg. ID 56.) As for her "introductory period evaluation" in February 2023, Plaintiff received a score of "strongly agree" as to her job knowledge, as well as neutral scores for initiative and

2

communication. (Evaluation, Doc. 13-5, Pg. ID 57.) However, Plaintiff received scores of "disagree" when it came to dependability, behavior consistent with Otterbein's values, adherence to policies, safe work habits, customer service, supporting the self-directed team, and overall job performance. (*Id.*)

Plaintiff also received various peer concern forms about her work performance. (Klespies Decl., Doc. 13-1, Pg. ID 49; Concern Forms, Doc. 13-6, Pg. ID 58-69.) These forms allow employees to voice concerns about their colleagues. (Klespies Decl., Doc. 13-1, Pg. ID 49.) On February 8, 2023, Klespies and Cruz called Plaintiff to discuss the concern forms and Plaintiff's ongoing performance issues. (*Id.* at Pg. ID 50.) During this conversation, Plaintiff admitted that she had slept in the "den area" while at work. (*Id.*) Ultimately, Klespies and Cruz informed Plaintiff that she was being terminated for violations of Otterbein policy, including her pattern of sleeping while on duty and failing to properly care for the residents. (*Id.*) Plaintiff then notified Klespies of a medical condition for the first time, although Plaintiff had never requested any accommodation for any disability from Otterbein. (*Id.*)

Turning to the procedural history, Plaintiff filed this case on March 15, 2024. (*See* Compl., Doc. 1.) Plaintiff brings claims for racial discrimination, retaliation, failure to accommodate a disability, wrongful termination, negligence, as well as negligent hiring, supervision, and retention. (*Id.*) Otterbein Senior Life, Otterbein Senior Life-Maineville (collectively "Otterbein"), Kathleen Klespies, and Kelly Davis—the alleged Director of Nursing—are all Defendants. (*Id.*) On January 31, 2025, Defendants moved for summary judgment on each claim. (Motion, Doc. 14.) Plaintiff filed a Response in Opposition (Doc.

3

16), to which Defendants filed a Reply in Support (Doc. 17). Plaintiff proceeded to file a Sur-Reply (Doc. 18) on March 27, 2025. Defendants moved to strike this Sur-Reply, and Plaintiff has not filed any opposition to this Motion to Strike (Doc. 19).

## LAW AND ANALYSIS

The Court begins with a few preliminary matters concerning Defendants' Motion to Strike Plaintiff's Sur-Reply and the timeliness of Plaintiff's Response. Then, the Court will proceed to the substance of Defendants' Motion for Summary Judgment.

### I. Motion to Strike

Defendants have moved to strike Plaintiff's Sur-Reply (and the corresponding exhibits) as untimely, unwarranted, and unfairly prejudicial. (Motion to Strike, Doc. 19.) The Local Rules provide that "[n]o additional memoranda beyond [the response and reply] are permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Sur-replies are generally a highly disfavored practice but may be appropriate in certain situations, such as to address an argument raised for the first time in a reply. *See Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020); *Eldridge v. Cardif Life Ins. Co.*, 266 F.R.D. 173, 175 (N.D. Ohio 2010); *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010). Here, Plaintiff did not seek leave before filing the Sur-Reply. Furthermore, Plaintiff failed to provide any indication for good cause to allow such a filing within the Sur-Reply itself. *See Hardy v. Genesee Cnty. Cmty. Action Res. Dep't*, No. 24-CV-11190, 2024 WL 4756891, at *1 (E.D. Mich. Nov. 12, 2024) (striking sur-reply that was filed without a motion for leave or good cause shown).

Plaintiff, indeed, did not file any opposition at all to Defendant's Motion to Strike the Sur-Reply.

The Local Rules also provide that "[w]hen proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence." S.D. Ohio Civ. R. 7.2(d). Plaintiff had ample opportunity to provide evidence in her Response in Opposition to Defendants' Motion for Summary Judgment, but she chose not to do so. Though Plaintiff is proceeding pro se, she "still must comply with the procedural rules that govern civil cases." *Wilds v. Warden, Chillicothe Corr. Inst.*, 745 F. Supp. 3d 591, 597 (S.D. Ohio 2024) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000) ("Although it may seem harsh to turn a blind eye to [a party's] belated proffer of evidence, that is the price to be paid by litigants who do not comply with the rules . . . ."). The Court would also note that Plaintiff's Sur-Reply does not provide record citations or a response to Defendants' proposed undisputed facts as required by the undersigned's Standing Orders. (*See* Standing Orders, III.B.2.) For all these reasons, the Court strikes Plaintiff's Sur-Reply (Doc. 18) and its accompanying exhibits.

**II.     Timeliness of Plaintiff's Response in Opposition to Summary Judgment**

Defendants contend that Plaintiff's Response in Opposition to Summary Judgment (Doc. 16) is untimely. (Reply, Doc. 17, Pg. ID 172-73.) Courts are not necessarily obligated to consider an untimely response, especially when no good cause for the delay has been shown. *See U.S. v. Pleasant*, 12 F. App'x 262, 269 (6th Cir. 2001); *Castleberry v. Neumann L.*

5

*P.C.*, No. 1:07-CV-856, 2008 WL 5744179, at *5 (W.D. Mich. July 9, 2008) (collecting cases). In any event, the Court addresses Plaintiff's Response in the analysis that follows.

### III. Motion for Summary Judgment

A court must grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56). In making this determination, a court views the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). This can be accomplished by pointing out the lack of admissible evidence to support the nonmoving party's case. *See* Fed. R. Civ. P. 56(c)(1)(B); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). If the moving party meets this burden, it then becomes the nonmoving party's responsibility to put forth affirmative evidence to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 257 (1986).

Notably, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). To preclude summary judgment, the nonmoving party must point to probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Id*. If the nonmoving party fails to make the necessary showing for an element on which

it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

As confirmed by the Sixth Circuit, a court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *see also* Fed. R. Civ. P. 56(c)(3) (explaining that "the court need consider only the cited materials"). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

The undersigned's Standing Orders also require that any response in opposition to a motion for summary judgment include a response to the proposed undisputed facts that (1) states whether each fact is admitted or denied; and (2) if denied, provide citation to the supporting documentation in the record. (Standing Orders, III.B.2.) On January 31, 2025, Defendants filed a Notice of Service in which they confirmed that they served Plaintiff with copies of the Undersigned's Standing Orders and Federal Rule of Civil Procedure 56. (*See* Notice, Doc. 15.)

Plaintiff, in her Response in Opposition to Defendants' Motion for Summary Judgment, neither responded to Defendant's proposed undisputed facts nor provided any citations whatsoever to the record to support any factual or conclusory proposition. A nonmovant may not rely solely on the pleadings but must present affirmative evidence supporting her claims. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Unsworn allegations in a complaint are not considered evidence. *See Mack v. Bessner*, 512

7

F. Supp. 3d 784, 792 (E.D. Mich. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sweeting v. Schweigtzer*, No. 19-3930, 2020 WL 5822513, at *2 (6th Cir. July 31, 2020)). Additionally, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment." *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court further recognizes that Plaintiff's Response fails to address or otherwise support every disputed claim. The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). With these rules in mind, and in order to ensure a thorough disposition, the Court will now consider each specific claim.

i. **Race Discrimination Claim**

Plaintiff's first claim involves racial discrimination in violation of Ohio Revised Code § 4112.02(A). Defendants preliminarily argue that—to the extent this claim is alleged against Klespies and Davis as individuals—it fails due to the plain statutory language. (Motion, Doc. 14, Pg. ID 108-09.) Specifically, Ohio law provides that "no person has a cause of action or claim based on an unlawful discriminatory practice relating to employment described in [Ohio Revised Code § 4112.02(A)] against a supervisor, manager, or other employee of an employer unless that supervisor, manager, or other employee is the employer." Ohio Rev. Code § 4112.08(A), § 4112.01(A)(24)(a). Therefore, Plaintiff's discrimination claim fails against Klespies and Davis since there is

8

no evidence that they were Plaintiff's employers. *See Calkins v. Danaher Corp.*, 739 F. Supp. 3d 615, 624-25 (N.D. Ohio 2024) (collecting cases); *Burch v. Ohio Farmers Ins. Co.*, 211 N.E.3d 202, 209 (Ohio Ct. App. 2023). Plaintiff does not contest this conclusion.

Next, the Court considers Plaintiff's racial discrimination claim against Otterbein. Though Plaintiff brings this claim under Ohio law, Title VII is generally applicable in this circumstance as well. *See Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). When, like here, there is no direct evidence of discrimination, courts apply the well-traveled *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). First, a plaintiff must establish a prima facie case of discrimination by demonstrating four elements: "(1) [she] is a member of a protected class; (2) [s]he was qualified for the job and performed it satisfactorily; (3) despite [her] qualifications and performance, [s]he suffered an adverse employment action; and (4) [she] was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of [her] protected class." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014). If a plaintiff makes a prima facie case, the burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. 802-03. Then, the burden shifts back to the plaintiff to show that this proffered reason is merely pretext. *Id.* at 804.

Plaintiff's Complaint alleges that she was "subjected to a racially hostile atmosphere and was discriminated against with respect to her race and the terms and

9

conditions of her employment." (Compl., Doc. 1, ¶ 30.) Defendants contend that Plaintiff's discrimination claim stumbles on the prima facie step because she cannot show that her terms and conditions of employment were discriminatorily impacted or that a similarly situated colleague—who was outside of her protected class—was treated more favorably. (Motion, Doc. 14, Pg. ID 110-11.)

To the extent that Plaintiff could be raising a hostile work environment claim, Defendants argue that the claim should still be dismissed since Plaintiff cannot make a prima facie showing. "To establish a prima facie case of a racially hostile work environment, a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009). Defendants contend that there is no evidence of racial harassment—let alone to the level of creating a hostile work environment. (Response, Doc. 14, Pg. ID 111.)

In response, Plaintiff states that Defendants "displayed discriminatory actions against [her] by using the white staff to make . . . unfounded accusations" and that Defendants displayed "favoritism to all white employees." (Response, Doc. 16, Pg. ID 169.) However, Plaintiff does not point to any record evidence to support these conclusory and unsubstantiated assertions. *See* Fed. R. Civ. P. 56(e); *Gooden*, 67 F. App'x at 895 (affirming summary judgment when nonmovant "responded only with conclusory, unsworn statements unsupported by any admissible evidence"); *Moore v.*

10

*Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (explaining that a nonmovant must present "significant probative evidence" and not merely "some metaphysical doubt as to the material facts"). Thus, Plaintiff has failed to make a prima facie showing of race discrimination.

In any event, it is well settled that poor performance and policy violations amount to legitimate, nondiscriminatory reasons for terminating an employee. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 546 (6th Cir. 2008); *Schwendeman v. Marietta City Sch.*, 436 F. Supp. 3d 1045, 1061 (S.D. Ohio 2020). Here, Defendants point to Plaintiff's "long string of documented performance issues" as the reason for her termination. (Motion, Doc. 14, Pg. ID 114-15; *see also* Klespies Decl., Doc. 13-1, Pg. ID 50.) Plaintiff was notified that she had developed a pattern of not ensuring that residents were showering. (Educational Consult, Doc. 13-3, Pg. ID 55.) She was also advised to stop using break time to take naps on campus. (*Id.*) Despite this warning, Plaintiff later received a disciplinary action for sleeping in a common area. (Disciplinary Action, Doc. 13-4, Pg. ID 56.) Tellingly, Plaintiff received scores of "disagree" on her evaluation when it came to dependability, behavior consistent with Otterbein's values, adherence to policies, safe work habits, customer service, supporting the self-directed team, and overall job performance. (Evaluation, Doc. 13-5, Pg. ID 57.) Plaintiff also received multiple "concern forms" about her work-related behavior from her colleagues. (Klespies Decl., Doc. 13-1, Pg. ID 49.) Thus, even if Plaintiff had established a prima facie case, Defendants meet their burden of evincing a legitimate, nondiscriminatory reason for terminating Plaintiff.

Accordingly, the burden would then shift back to Plaintiff to show how this reason is merely pretext. A plaintiff may accomplish this by demonstrating that the stated reason: "(1) has no basis in fact, (2) did not actually motivate the adverse employment decision, or (3) was insufficient to motivate discharge." *Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 347 (6th Cir. 2015). These categories are not meant to unduly restrict a court's analysis of the ultimate inquiry: "did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quotation omitted). In response, Plaintiff makes several conclusory statements about Defendants raising "false accusations regarding Plaintiff's ability to do her job" and not properly investigating the allegations. (Response, Doc. 16, Pg. ID 168-69.) Notably, however, Plaintiff does not cite to any record evidence to support these arguments. Thus, Plaintiff fails to demonstrate pretext.

For all these reasons, Defendants are entitled to summary judgment on Plaintiff's race discrimination claim; the evidence in the record would not permit a reasonable jury to find for Plaintiff on this claim.

### ii. Retaliation Claim

Defendants next seek summary judgment on Plaintiff's retaliation claim because "the allegations are generic and uncorroborated." (Motion, Doc. 14, Pg. ID 111.) According to Plaintiff's Complaint, Defendants retaliated against her after she complained about "her treatment, Defendants' employment practices, and the discriminatory and hostile environment she was forced to endure." (Compl., Doc. 1, ¶ 48.) She also alleges that "Defendants [thereafter] engaged in malicious acts of retaliation

by significantly reducing working hours, making racial slurs, and spreading malicious gossip about Plaintiff, [and causing] termination and other acts and conditions of employment with no justifiable business reasons." (*Id.*)

In order to make a prima facie case for retaliation, Plaintiff must show that: "(1) she engaged in a protected activity; (2) her exercise of such protected activity was known by [Defendants]; (3) thereafter, [Defendants] took an action that was materially adverse to [Plaintiff]; and (4) a causal connection existed between the protected activity and the materially adverse action." *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) (quotation omitted).

Defendants contend that there is no evidence of adverse actions or a causal relationship between protected activity and any adverse employment action. (Motion, Doc. 14, Pg. ID 113.) "To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in [the protected activity]." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003). Plaintiff does not address this argument in her Response or point to any evidence in the record to suggest that her termination or any adverse employment action was caused by retaliation. (*See* Response, Doc. 16.) At most, Plaintiff asserts that, "if given the opportunity, [she] will show [that Defendants] retaliated against" her due to her race. (*Id.* at Pg. ID 169.) This bald assertion is insufficient to defeat summary judgment.

13

Plaintiff therefore fails to satisfy her prima facie burden. Additionally, even if Plaintiff had met this burden, she does not marshal any evidence that Defendants' legitimate, nondiscriminatory reasons for terminating her were pretextual. For all these reasons, Defendants are entitled to summary judgment on Plaintiff's retaliation claim. The evidence in the record would not permit a reasonable jury to find for Plaintiff.

### iii. Failure to Accommodate Claim

The Court now turns to Plaintiff's claim for failure to accommodate under the Americans with Disabilities Act ("ADA"). Discrimination under the ADA includes an employer who fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). "To establish a *prima facie* case for failure to accommodate, a plaintiff must show that: (1) [s]he is disabled under the ADA; (2) [s]he is otherwise qualified for the position, with or without a reasonable accommodation; (3) [her] employer knew or had reason to know of [her] disability; (4) [s]he requested a reasonable accommodation; and (5) the employer failed to provide the reasonable accommodation." *Aldini v. Kroger Co. of Michigan*, 628 F. App'x 347, 350 (6th Cir. 2015).

Defendants contend that there is no evidence that (1) Plaintiff had a disability that substantially limited a major life activity, (2) Plaintiff had ever requested an accommodation from Otterbein, or (3) any accommodation request was denied by Otterbein. (Motion, Doc. 14, Pg. ID 116-17.) The Court agrees. While Plaintiff argues that Defendants failed "to provide parking spots closer to the building for handicap employees" and failed to "adhere to Plaintiff's medical documentation presented to them

14

regarding [Plaintiff's] medical conditions" (Response, Doc. 16, Pg. ID 168-69), she does not elaborate on these assertions or identify admissible evidence. As the record stands, there is no evidence that Plaintiff requested an accommodation from Otterbein or that Otterbein knew of any purported disability before the day of termination. To the contrary, the record indicates that Plaintiff never requested an accommodation based on a disability. (*See* Klespies Decl., Doc. 13-1, Pg. ID 50.) Thus, Defendants are entitled to summary judgment on this claim.

    iv.   **Wrongful Termination Claim**

Defendants contend that they are entitled to summary judgment on Plaintiff's wrongful termination claim. (Motion, Doc. 14, Pg. ID 118-19.) As Plaintiff does not mention or otherwise defend this claim in her Response, the Court finds that she has abandoned this claim. *See Brown*, 545 F. App'x at 372. Summary judgment in favor of Defendants is also proper for the following reason.

A wrongful termination claim under Ohio law involves four elements: "(1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) in general, dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) the plaintiff's dismissal was motivated by conduct related to the public policy; and (4) the employer did not have a justifiable legitimate business justification for the dismissal." *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 707-08 (S.D. Ohio 2014) (quoting *Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 529-30 (Ohio 2002) (cleaned up)).

15

As Defendants point out, the "jeopardizing public policy" element is not satisfied when other adequate remedies are available. *See Day*, 82 F. Supp. 3d at 708 (citing *Wiles*, 773 N.E.2d at 531). Courts have frequently held that the Ohio statutes prohibiting racial discrimination and retaliation, as well as the ADA, all provide such adequate remedies. *See, e.g., Mitchell v. Fujitec Am., Inc.*, 518 F. Supp. 3d 1073, 1089 (S.D. Ohio 2021) (finding adequate remedy in Ohio Revised Code § 4112 for race discrimination and related retaliation); *Barton v. Air Express Int'l USA, Inc.*, No. 106-CV-1885, 2007 WL 851882, at *2 (N.D. Ohio Mar. 19, 2007) (finding adequate remedy in Ohio Revised Code § 4112, Title VII, and the ADA); *Day*, 82 F. Supp. 3d at 708 (finding adequate remedy in the ADA). It appears that Plaintiff is claiming that she was wrongfully terminated based upon alleged racial discrimination and retaliation. (*See* Compl., Doc. 1, ¶¶ 40-42.) Since the public policies around these issues are adequately addressed in the statutory scheme, Defendants are entitled to summary judgment on Plaintiff's wrongful termination claim.

v. **Negligence Claim**

Defendants argue that Plaintiff's negligence claim fails because she has neither identified a duty nor a breach of any such duty. (Motion, Doc. 14, Pg. ID 119-20.) As Plaintiff does not mention or otherwise defend this claim in her Response, the Court finds that she has abandoned this negligence claim. *See Brown*, 545 F. App'x at 372. Summary judgment is also proper for Defendants for the following reason.

Plaintiff's Complaint alleges that Defendants Davis and Klespies negligently accused Plaintiff of committing certain actions or omissions that ultimately resulted in her termination. (Compl., Doc. 1, ¶¶ 34-39.) "Under Ohio law, in order to recover on a

16

negligence claim, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, and (3) that the breach of the duty proximately caused the plaintiff's injury." *Winkler v. Win Win Aviation, Inc.*, 339 F. Supp. 3d 772, 778 (S.D. Ohio 2018), *aff'd*, 769 F. App'x 337 (6th Cir. 2019) (quotation omitted). Plaintiff does not provide any evidence or reasoning as to how Defendants breached a duty that they owed Plaintiff. Thus, Defendants are entitled to summary judgment on this claim.

      **vi.**    **Negligent Hiring, Supervising, and Retention Claim**

Finally, the Court turns to Defendants' argument that Plaintiff's negligent hiring, supervising, and retention claim fails. (Motion, Doc. 14, Pg. ID 120-21.) As Plaintiff does not mention or otherwise defend this claim in her Response, the Court finds that she has abandoned this claim. *See Brown*, 545 F. App'x at 372. Summary judgment in favor of Defendants is also proper for the following reason.

"The Ohio elements of a negligent hiring or retention claim are: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Viglianco v. Athenian Assisted Living, Ltd.*, No. 1:15-CV-232, 2015 WL 5782979, at *6 (N.D. Ohio Oct. 1, 2015) (quotation omitted). Additionally, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988).

Defendants argue that there is no evidence of any underlying individual tortious conduct or that Otterbein knew of the employees' alleged incompetence. (Motion, Doc. 14, Pg. ID 120-21.) Indeed, Plaintiff's allegations for this claim generally allege that "Defendants negligently hired and retained and/or failed to train and instruct its employees who were co-workers and supervisors of Plaintiff." (Compl., Doc. 1, ¶ 44.) Plaintiff does not identify any evidence to show how other employees were incompetent or that Otterbein was aware of such incompetence. Thus, summary judgment is properly entered in favor of Defendants as to this claim.

## CONCLUSION

For all these reasons, the Court **GRANTS** Defendants' Motion to Strike (Doc. 19) and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 14). This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: *Matthew W. McFarland*
JUDGE MATTHEW W. McFARLAND